Argued and submitted April 12, ballot title certified as modified April 21, 1988

# AMERICAN CIVIL LIBERTIES UNION OF OREGON, INC., et al,
## *Petitioners,*

*v.*

# ROBERTS,
## *Respondent,*

# MABON et al,
## *Intervenors.*

(SC S35060)

752 P2d 1215

Charles F. Hinkle, Portland, filed the petition and argued the cause on behalf of the petitioners.

John A. Reuling, Jr., Assistant Attorney General, Salem, filed the memorandum and argued the cause on behalf of respondents. With him on the memorandum were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

John Chally, Portland, filed the memorandum on behalf of the intervenors. With him on the memorandum was Bouneff, Chally & Marshall, Portland.

PER CURIAM

## PER CURIAM

This is an original proceeding pursuant to ORS 250.085(2) for review of a ballot title for an initiative measure proposing a statute that would revoke Executive Order No. EO-87-20. The order directs state officials not to discriminate on the basis of sexual orientation. Petitioners[1] urge this Court to reject the ballot title for the measure certified by the Attorney General and to substitute one of their devising. We find the Question portion of the Attorney General's ballot title to be insufficient, and direct that it be altered. We hold the ballot title is otherwise sufficient.

The full text of the proposed measure is as follows:

*"AN ACT*

*"Be It Enacted by the People of the State of Oregon:*

*"SECTION 1.* Executive Order No. EO-87-20 be, and hereby is, revoked.

*"SECTION 2.* No state official shall forbid the taking of any personnel action against any state employe based on the sexual orientation of such employe.

*"SECTION 3.* This measure shall not be deemed to limit the authority of any state official to forbid generally the taking of personnel action against state employes based on non-job related factors.

*"SECTION 4.* For purposes of this measure "sexual orientation" means heterosexuality, homosexuality or bisexuality.

*"SECTION 5.* The various provisions of this measure are severable; therefore, if any provision of this measure be declared unconstitutional by any court of competent jurisdiction, the remaining provisions shall be unaffected by such declaration."

After receiving the text of the proposed measure, the Attorney General prepared a draft ballot title and submitted it to the Secretary of State, pursuant to ORS 250.065(3). That draft ballot title read as follows:

---

[1] Petitioners are the American Civil Liberties Union of Oregon, Inc., and Stevie Remington, its executive director. They shall be referred to throughout this opinion simply as "Petitioners."

## "REVOKES BAN ON
## SEXUAL ORIENTATION DISCRIMINATION
## IN STATE EXECUTIVE BRANCH

"*QUESTION:* Shall voters revoke Governor's authority to ban discrimination, based on sexual orientation, in state executive branch employment and service?

"*EXPLANATION:* Measure revokes Governor's order which bans discrimination, based on sexual orientation, in executive branch employment and in carrying out executive branch duties within state government. Measure provides that no state official shall forbid taking personnel action against a state employe because of the employe's sexual orientation. For the purposes of this measure, sexual orientation means heterosexuality, homosexuality, or bisexuality. Measure does not affect authority of state officials to forbid personnel actions against state employe based on nonjob related factors."

Pursuant to ORS 250.067(1), the Secretary of State published this draft ballot title and petitioners thereafter submitted timely written comments to the Secretary of State. The Attorney General certified the ballot title challenged in this petition on March 22, 1988. That ballot title certified by the Attorney General reads as follows:

## "REVOKES BAN ON
## SEXUAL ORIENTATION DISCRIMINATION
## IN STATE EXECUTIVE BRANCH

"*Question:* Shall Governor, executive branch bans against sexual orientation discrimination be unlawful except for bans against discrimination based on nonjob factors?

"*Explanation:* Enacts new law. Revokes Governor's order which bans discrimination, based on sexual orientation, both in executive branch employment and in carrying out executive branch duties within state government. Measure provides that no state official shall forbid taking personnel action against a state employe because of the employe's sexual orientation. Measure permits state officials to forbid taking personnel actions against state employes based on nonjob related factors. For the purposes of this measure, sexual orientation means heterosexuality, homosexuality, or bisexuality."

This Court reviews the ballot title for "substantial compliance with the requirements of ORS 250.035 and 250.039 * * *." ORS 250.085(4). ORS 250.035(1) requires (a)

that the Caption reasonably identify the subject of the measure; (b) that the Question plainly phrase the chief purpose of the measure; and (c) that the Explanation be a concise and impartial statement of not more than 85 words summarizing the measure and its major effect. ORS 250.039 requires that the entire ballot title (Caption, Question and Explanation) be impartial, concise, and accurate.

Petitioners do not challenge the Caption. They challenge the Question prepared by the Attorney General because they believe it is inaccurate and does not plainly phrase the chief purpose of the measure, and they challenge the Explanation because they believe it is inaccurate. We consider these two arguments in reverse order.

Petitioners argue that the Explanation fails to make clear that the proposed measure would implicitly authorize employes of the state executive department to discriminate on the basis of sexual orientation against persons seeking to obtain state services. Petitioners reason that the proposed measure would have this effect because the first section of the measure revokes Executive Order No. EO-87-20. Section 2 of the Executive Order states:

"No officer, employe or agency within the executive branch of state government shall, in carrying out the duties of state government, discriminate against any person on the basis on sexual orientation."

By revoking that portion of the order, petitioners argue, the measure in effect authorizes state employes to discriminate on the basis of sexual orientation in providing state services, and the Explanation should say so.

The Attorney General argues in response that the kinds of discrimination petitioners claim will be authorized by enactment of the proposed measure are presently forbidden by superior law, including the Fourteenth Amendment to the United States Constitution and Article I, section 20, of the Oregon Constitution. If the repeal of the EO-87-20 order does not cause the legal result petitioners fear, the Attorney General reasons, there is no need for the Explanation to discuss the matter.

This answer of the Attorney General is too simplistic. It is possible to construe some Oregon statutes as prohibiting

discrimination based on sexual orientation. *See, e.g.,* ORS 659.030 (prohibiting employment discrimination against an individual "because of the * * * sex * * * of any other person with whom the individual associates"). But the scope of the pertinent statutes is not as broad as the language of EO-87-20, and the extent to which the state and federal constitutions provide protection like that intended by EO-87-20 is unclear.

On the other hand, the revocation of EO-87-20 does not, standing by itself, affirmatively authorize anything. The ultimate permissibility, after the revocation of EO-87-20, of any of the acts EO-87-20 was intended to prohibit is a matter for other law whose precise contours are well outside the scope of our review of this ballot title. It might have been preferable for the Explanation to note that the permissibility of any kind of discrimination based on sexual orientation was left to other law, but the 85-word limit of the Explanation made such elaboration difficult.

■■ Moreover, the fact that other information in the Explanation might have been desirable does not render the one certified by the Attorney General legally insufficient. That Explanation does satisfactorily explain what EO-87-20 provides and that the order would be revoked. The balance of the Explanation appropriately touches upon the balance of the proposed measure's effect. Viewed as a whole, the Explanation substantially complies with the requirements of ORS 250.035 and 250.039, and it is approved.

■ Petitioners also challenge a portion of the Question in the Attorney General's ballot title. As originally proposed, that Question asked,

"Shall voters revoke Governor's authority to ban discrimination, based on sexual orientation, in state executive branch employment and service?"

However, after the period provided by ORS 250.067 for comment on the proposed ballot title, the Attorney General certified a significantly altered Question:

"Shall Governor, executive branch bans against sexual orientation discrimination be unlawful except for bans against discrimination based on nonjob factors?"

We think parsing the Attorney General's certified question is too much to ask of any voter. Use of "bans,"

commonly a verb, as a noun, together with a jawbreaking phrase like "against sexual orientation discrimination," does not plainly phrase the chief purpose of the measure, as required by ORS 250.035(1)(b). The Question certified by the Attorney General is disapproved.

The remaining issue is what Question should be approved. The Question is supposed to state the measure's "chief purpose" — a goal sometimes easier to state than to achieve. *See Reed v. Roberts,* 304 Or 649, 654-55, 748 P2d 542 (1988).

Here, as in *Reed,* two purposes are discernible. Beyond the revocation of EO-87-20 by section one, sections two and three of the measure appear to set guidelines as to whether certain factors may or may not be considered by state supervisory personnel in connection with "personnel actions." However, and while these latter sections doubtless are significant to the measure's sponsors, the revocation of the executive order is the linchpin of the measure. That revocation is the "chief purpose," as was reflected in the Attorney General's original proposed Question. When that originally proposed language is substituted for the Attorney General's certified Question, the resulting ballot title substantially complies with the requirements of ORS 250.035 and 250.039.[2] ORS 250.085(4).

In summary, we certify the following ballot title to the Secretary of State:

### "REVOKES BAN ON SEXUAL ORIENTATION DISCRIMINATION IN STATE EXECUTIVE BRANCH

*"Question:* Shall voters revoke Governor's authority to ban discrimination, based on sexual orientation, in state executive department employment and services?

*"Explanation:* Enacts new law. Revokes Governor's order which bans discrimination, based on sexual orientation, both in executive branch employment and in carrying out executive branch duties within state government. Measure

---

[2] We have modified the Question by making the last word, "service," plural. We believe "services" makes it clearer that the word refers to something other than employment by the state. We have also changed the word "branch" to "department" in order to more accurately reflect the true scope of EO-87-20.

provides that no state official shall forbid taking personnel action against a state employe because of the employe's sexual orientation. Measure permits state officials to forbid taking personnel actions against state employes based on nonjob related factors. For the purposes of this measure, sexual orientation means heterosexuality, homosexuality, or bisexuality."

Ballot title certified as modified.