226 December 14, 2017 No. 64

IN THE SUPREME COURT OF THE
STATE OF OREGON

J. L. WILSON
and Justen A. Rainey,
*Petitioners,*

*v.*

Ellen F. ROSENBLUM,
Attorney General, State of Oregon,
*Respondent.*

S065263 (Control)

Mike FITZ
*Petitioner,*

*v.*

Ellen F. ROSENBLUM,
Attorney General, State of Oregon,
*Respondent.*

S065264

En Banc

On petition to review ballot title filed September 11, 2017; considered and under advisement on November 16, 2017.

Gregory A. Chaimov and Tim Cunningham, Davis Wright Tremaine LLP, Portland, filed the petition and reply memorandum on behalf of petitioners Wilson and Rainey.

Nathan R. Rietmann, Rietmann & Rietmann, LLP, Salem, filed the reply memorandum on behalf of petitioner Fitz.

Rolf C. Moan, Assistant Attorney General, Salem, filed the answering memorandum on behalf of respondent. Also on the answering memorandum were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

LANDAU, J.

The ballot title is referred to the Attorney General for modification.

**LANDAU, J.**

Petitioners challenge the legal sufficiency of the Attorney General's certified ballot title for Initiative Petition 21 (2018). Our task in reviewing ballot title challenges is to determine whether the ballot title substantially complies with statutory requirements. *See* ORS 250.085(5) (stating standard of review). In this case, we conclude that, in two respects, the Attorney General's certified ballot title does not substantially comply with the law. We therefore refer it to the Attorney General for modification.

Current Oregon law imposes a tax on the distribution of cigarettes and tobacco products in the state. ORS 323.030. The tax is collected from distributors before retailers purchase the products and sell them to consumers.

In the case of cigarettes, the law requires distributors to pay the tax at a rate specified in mills (thousandths of a dollar) per cigarette. *Id.* The Oregon Department of Revenue furnishes tax stamps to distributors as proof of payment of the tax. ORS 323.160. The tax stamps then must be affixed to each package of cigarettes before distribution. *Id.* Federal law requires cigarettes to be sold in packages of no fewer than 20, 21 CFR § 1140.16(b) (2010), and indeed cigarettes are commonly sold in packages, or "packs," of 20. The total tax rate for cigarettes currently is 66.5 mills per cigarette, or $1.33 per pack. ORS 323.030, ORS 323.031.

In the case of cigars or other tobacco products, the tax is imposed differently. For cigars, the tax is 65 percent of the wholesale price, but it is capped at 50 cents per cigar. ORS 323.505(2)(a). For other tobacco products, the tax is either a similar percentage of the wholesale price or an amount by weight of the product. ORS 323.505(2)(b), (c).

IP 21, if enacted, would alter the foregoing tax scheme in four ways. First, it would increase the tax on cigarettes by 100 mills per cigarette, or $2.00 per pack. IP 21 §§ 1, 2. Second, it would eliminate the 50-cent cap on cigar taxes. *Id.* at § 4. Third, it would require that all moneys received from the new cigarette tax be first deposited with the state treasurer and, after the payment of any refunds for overpayments, be credited to the Public Health Account, "to

be used for the funding of local public health authorities in all areas of the state for public health programs." *Id.* at § 3. Fourth, certain sections of the measure—specifically, those amending the cigarette tax and the use of cigarette-tax revenues—would apply retroactively to the distribution of cigarettes and tobacco products on or after January 1, 2018. *Id.* at § 5.

The Attorney General certified the following ballot title for IP 21:

**"Increases cigarette tax; resulting revenue to fund public health programs; removes cap on cigar tax**.

"**Result of 'Yes' Vote:**   'Yes' vote increases tax on cigarettes by 10 cents per cigarette; resulting revenue to fund public health programs. Removes 50 cent cap on cigar tax.

"**Result of 'No' Vote:**   'No' vote retains tax of 6.65 cents per cigarette ($1.33 per pack of 20); retains cigar tax cap of 50 cents per cigar.

"**Summary:**   Current law imposes a tax of 6.65 cents per cigarette ($1.33 per pack of 20). Of that tax, 3/4 of a cent per cigarette supports community mental-health-program services for those with mental/emotional disturbances, those receiving psychiatric care in hospitals, those receiving services for drug, alcohol abuse/dependency. Of remainder, 89.65% goes to general fund, 10.35% go to cities, counties, Department of Transportation. Current law also imposes tax of 65% of wholesale cigar price, capped at 50 cents per cigar. Proposed measure increases tax by 10 cents per cigarette (raising tax to $3.33 per pack of 20) for sales on or after January 1, 2018. Resulting revenue to fund public health programs. Eliminates 50 cent cigar tax cap. Other provisions.

Petitioners Wilson and Rainey challenge the caption and the "yes" vote result statement. Petitioner Fitz challenges the caption, the "yes" and "no" vote result statements, and the summary.

We begin with arguments about the caption. ORS 250.035(2)(a) provides that a ballot title must contain "[a] caption of not more than 15 words that reasonably identifies the subject matter of the state measure." A caption satisfies

that standard if it describes the "actual major effect" of the measure or, if there is more than one major effect, all the major effects that can be described within the word limit. *Lavey v. Kroger*, 350 Or 559, 563, 258 P3d 1194 (2011).

Petitioners Wilson and Rainey contend that the caption fails to comport with that standard in that it refers only to the fact that IP 21 would "increase" cigarette taxation, without stating the magnitude of that increase. The Attorney General responds that stating that IP 21 would "increase" the cigarette tax "accurately describes its effect."

Whether a reference to a specific quantity or magnitude in a caption is required will depend on the nature of the measure and the complexity of the underlying law. In *Straube v. Myers*, 340 Or 253, 259-60, 132 P3d 658 (2006), for example, this court concluded that a caption stating that a measure would have the effect of "raising" taxes substantially complied with statutory requirements because "the tax increases set out in the measure are complex and thus difficult to compress accurately" to fit the word limit imposed by law.

In that regard, we note that, in other cases, this court has approved ballot titles concerning proposed increases in cigarette taxes that did spell out the magnitude of the increase. *See, e.g.*, *Girard/Edelman v. Myers*, 334 Or 114, 116, 45 P3d 934 (2002) ("Increases cigarette tax 60 cents per pack"). There appears to be nothing so complex about the tax measure at issue in IP 21 that the magnitude of the increase in the cigarette tax could not be specified without running afoul of word limits.

Moreover—and more important—that a caption is technically correct does not necessarily mean it accurately conveys the major effect of a measure. *See Parrish v. Rosenblum*, 362 Or 96, 104, 403 P3d 786 (2017) (depending on how a ballot title caption is framed, otherwise accurate information has the potential to be misleading). That is certainly true when material facts are omitted, and magnitude can be such a material fact. For example, saying that a car has "a number of miles on it" may be accurate, but that does not accurately disclose the true state of the vehicle if the

number happens to be 500,000. In this case, although it is accurate to say that enactment of IP 21 would "increase" cigarette taxes, that bare statement does not begin to convey the fact that its major effect would be to increase the tax by a truly significant amount—more than 150 percent.[1]

In a related vein, petitioners Wilson and Rainey, along with petitioner Fitz, contend that the caption's reference to the amount of the tax increase should be expressed in terms of an amount per pack, not an amount per cigarette. They note that cigarettes are sold in packs of 20, not individually. They also observe that the legislature, the chief petitioners, and the media commonly refer to the cigarette tax as a tax "per pack." The Attorney General responds that, "although cigarettes may be most commonly sold in packs of 20, nothing in current law *** requires cigarette sellers to do [so]." Moreover, the Attorney General argues, the measure itself states the tax increase per cigarette, not per pack.

It is true that, strictly speaking, IP 21 refers to a tax increase per cigarette. But parroting the precise words of a measure is not always adequate to communicate its major effect. In *Peterson v. Myers (S49308)*, 334 Or 48, 44 P3d 586 (2002), for instance, the ballot measure at issue would have imposed a limit on the number of years individuals could serve in various judicial offices. The ballot title caption described the measure as imposing "term limits" for those judicial offices. The petitioners who challenged the caption argued that it was not correct, in that the measure imposed limits on the maximum number of years a person could serve, not a limit on the number of terms. This court rejected the argument, explaining that "the phrase 'term limits' is one of common parlance that voters readily will understand to indicate that the proposed measure, if adopted, will set a durational limit" on service in a judicial office. *Id.* at 52.

---

[1] That the magnitude of the proposed increase is material is borne out by media coverage about IP 21. *E.g.*, Gordon R. Friedman, *Proposed ballot measure would increase cigarette taxes $2 a pack*, The Oregonian (April 26, 2017), http://www.oregonlive.com/politics/index.ssf/2017/04/new_ballot_measure_would_incea.html; *Proposed ballot measure would boost Oregon cigarette tax by $2*, KATU-TV (April 26, 2017), http://katu.com/news/politics/proposed-ballot-measure-would-boost-oregon-cigarette-tax-by-2.

So also in this case, describing the proposed cigarette tax increase on a per-pack basis conforms to common parlance. Indeed, as we have noted, cigarettes may not lawfully be sold in less than packs of 20. In that regard, it bears noting that other provisions of the Oregon statutes pertaining to cigarette taxation refer to affixing proof of payment of the tax on each "package." ORS 323.160. And the Department of Revenue's own website summarizing the state's cigarette tax laws states that "Oregon's cigarette tax rate is $1.32 per stamp for a pack of 20 cigarettes." http://www.oregon.gov/DOR/programs/businesses/Pages/cigarette-overview.aspx (accessed Dec 6, 2017).

Petitioners Wilson, Rainey, and Fitz also argue that the caption is deficient in that it fails to state that IP 21 would apply retroactively. Citing this court's decision in *Kain v. Myers (S49089)*, 333 Or 446, 41 P3d 416 (2002), they argue that retroactivity of a measure is an actual, major effect and that it would be easy for the caption simply to state that the measure "applies retroactively." The Attorney General replies that *Kain* is distinguishable and that, given the limited word-count permitted in a ballot title caption, retroactivity is not a sufficiently significant effect to warrant displacing other matters currently in the caption.

We agree with the Attorney General. Petitioners are mistaken that conveying the retroactive effect of IP 21 would be as simple as adding the words "applies retroactively." The fact is that the entire measure would *not* apply retroactively. Only parts of it would—specifically, the parts that concern the increase in tobacco tax and the use of the revenues that result. Other provisions concerning taxation of cigars and other tobacco products would not be applied retroactively. Under the circumstances, explaining accurately which portions of the measure would apply retroactively would be difficult to convey within the word-count limits imposed by law. *See Straube*, 340 Or at 260 ("[T]he tax increases set out in the measure are complex and thus difficult to compress accurately to fit the 15-word limit.").

For that reason, *Kain* is distinguishable. At issue in that case was a proposed measure that would have required redrafting of measures declared by the courts to be invalid

on a variety of "technical" grounds. The measure would have applied retroactively to "all court decisions" issued on or after a specified date. The Attorney General's certified ballot title did not mention that the measure would apply retroactively. On review before this court, the Attorney General conceded that the caption needed to convey that the measure would apply retroactively. This court accepted the concession because the measure would apply to "all court decisions" and was inextricably tied to all of the measure's other provisions. 333 Or at 448-49. That cannot be said of the partial retroactivity of IP 21.

Petitioner Fitz further contends that the caption does not substantially comply with the law in that it fails to state that a major effect of the measure would be to raise taxes on both cigarettes and cigars. The Attorney General responds that, in fact, the measure would not necessarily increase taxes on cigars.

The Attorney General is correct. If enacted, IP 21 might or might not result in an increase in tax on cigars. As we have noted, if enacted, IP 21 would eliminate a $0.50 cap on the taxation of cigars. It would not, however, alter the current tax on cigars of 65 percent of the wholesale price. That means that, unless the wholesale price of cigars exceeded a certain price point ($0.78), there would be no increase in the tax on those cigars at all.

Finally, petitioner Fitz argues that the caption is misleading because it "fails to inform voters how revenue from the cigar tax increase will be utilized." Fitz goes further and asserts that, as written, the caption is misleading in that it states that revenue from the cigar tax increase will be used to fund public health programs, when the majority of those revenues will go to the General Fund. The Attorney General observes in response that the caption mentions only the increase in *cigarette* taxes and the uses of the revenue raised from those taxes.

Again, the Attorney General has the better of the argument. To begin with, petitioner Fitz's argument is predicated on the misapprehension that IP 21 would result in a cigar-tax increase. As we have explained, that is not

necessarily the case. Aside from that, the measure specifies how revenues derived from increasing the *cigarette* tax will be used. It actually does not say anything about what happens to revenues derived from cigar taxes. Accordingly, the caption is not misleading in mentioning only limitations on the uses of revenue from cigarette taxes.

We turn to arguments about the legal sufficiency of the "yes" and "no" vote result statements. ORS 250.035 (2)(b)-(c) requires a ballot title's "yes" and "no" vote result statements to describe the "result," in no more than 25 words, of voting "yes" or "no" on a proposed measure.

Petitioners Wilson, Rainey, and Fitz all complain that the "yes" vote result statement fails to comply with that requirement because it does not identify the magnitude of the cigarette tax increase and does not do so in terms of an amount per pack of cigarettes. In light of our decision with respect to the caption, petitioners' contentions are well-taken.

Petitioner Fitz asserts that the "yes" vote result statement should inform voters that the majority of the revenue from the cigar tax increase is allocated to the General Fund. Our disposition of petitioner's similar argument with respect to the caption suffices to explain why the same argument fails here.

Petitioners Wilson and Rainey argue that the "yes" vote result statement should inform voters that the increase in the cigarette tax is retroactive. Our discussion of the argument with respect to the caption disposes of the same contention with regard to the "yes" vote result statement.

That leaves the ballot title summary. ORS 250.035 (2)(d) requires a summary to provide a "concise and impartial statement" of up to 125 words "summarizing the state measure and its major effect."

Petitioner Fitz argues that the summary is deficient in "its failure to provide voters with sufficient information to alert voters to the fact that IP 21 will reduce revenue for cities, counties, and others that rely on revenue from Oregon's existing cigarette tax." The reduction in revenue, he argues, will result from the fact that an increase in the price of

cigarettes will decrease the demand for them. The Attorney General responds that it is not appropriate for a summary to engage in speculation about the possible economic consequences of enacting a measure.

We agree with the Attorney General. A ballot title must state an "actual effect" and may not "speculate about the possible effects" of enactment. *Nearman/Miller v. Rosenblum*, 358 Or 818, 822, 371 P3d 1186 (2016). In this case, petitioner Fitz speculates that increasing the price of cigarettes will depress demand. But that is not necessarily the case, and involves unproven assumptions about the price elasticity of demand for cigarettes. We conclude that the summary appropriately does not comment on the possible economic effects of the proposed tax increase.

The ballot title is referred to the Attorney General for modification.